UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| FABIAN HUIZAR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXPERIAN INFORMATION )<br>SOLUTIONS INC., )<br>)<br>Defendant. | Cause No. 4:22-CV-85-PPS |

## **OPINION AND ORDER**

This case involves alleged violations of the Fair Credit Reporting Act. The Plaintiff, Fabian Huizar, claims that Experian Information Solutions repeatedly reported inaccurate information on his credit report relating to a car loan that was the subject of a judgment rendered in state court. Huizar hired two experts to help him prove his case, and Experian now seeks to exclude or limit their testimony. [DE 177]. Additionally, Huizar seeks permission to supplement his expert reports. [DE 209]. For the reasons explained below, Huizar will be allowed to supplement his experts' reports and most of the opinions offered by the experts will be admissible at trial.

### Factual Background

Huizar's first expert is Evan Hendricks. His report can be found in the record at [DE 178-2, Ex. B, Hendricks' Expert Report]. Mr. Hendricks has worked in the field of data privacy and credit reporting for over forty years. He was the Editor and Publisher of *Privacy Times* from 1981-2013. [*Id*. at 22]. He has consulted on FCRA cases for over 30

years and has served as an expert witness well over 100 times. [*Id*. at 27-47]. He has testified before Congress and the Federal Trade Commission dozens of times on issues relating to credit reporting and the importance of credit scores. [*Id*. at 23-24]. He is the author of a book on how credit scores work and credit reports work. [*Id*. at 24]. He is regularly asked to do CLE training for lawyers and presents at international conferences on consumer rights and data privacy. [*Id*. at 24-25]. In short, Mr. Hendricks is highly credentialed in the field of data privacy in general and credit reporting in particular.

In general, Hendricks will testify that Experian's system for dispute resolution is flawed which led to an inaccurate credit report in this case. He will testify that Experian's "reinvestigation" process—in other words, what happens when a consumer lodges a complaint about the accuracy of their credit report—is equally flawed. This is because it is not enough for Experian to simply parrot what the furnisher of the information tells it; there should instead be a more searching investigation when confronted with evidence that the furnisher's information is false. Hendricks will also testify about the importance of accurate and complete credit reporting and the impact credit reports can have on a consumer's creditworthiness. [DE 178-2 at 6-10, Ex. B, Hendricks' Expert Report]. As noted, Hendricks' opinions are based on his specialized knowledge in the field of credit reporting in general and the Fair Credit Reporting Act in particular.

Huizar's second proposed expert witness is Douglas Hollon. Hollon is a former employee of Experian. His report can be found in the record at [DE 178-1, Ex. A,

2

Hollon's Expert Report]. After sixteen years working as a paralegal for the Army's Criminal Investigations Division, Hollon was hired by Experian in 2005 as a Dispute Agent. In that role he worked in Experian's dispute processing center assisting consumers with credit report disputes. A year later, Hollon was promoted to a job in Experian's Consumer Affairs Special Services department. [*Id*. at 5]. This job entailed assisting consumers who have escalated their disputes within the Experian dispute resolution department. This involved disputes where third-party advocates interceded on a consumer's behalf regarding inaccurate credit reports. Those third-party advocates included lawyers, State Attorneys General, the Better Business Bureau or various state or federal legislators. Hollon's career at Experian in its corporate compliance department lasted 14 years. He often served as Experian's corporate 30(b)(6) representative because he had specialized knowledge of Experian's policies, procedures and operations. [*Id.* at 44]. He processed subpoena requests, served as Experian's liaison to various Congressman who made inquiries, regularly analyzed consumer disputes for Experian, and provided leadership and guidance to Experian supervisors. [*Id.*]

In 2019, Hollon left Experian and flipped sides. His present consulting firm, which he launched in 2020, frequently serves as an expert witness in FCRA cases against Experian and other credit reporting agencies. [DE 178-1 at 43-44, Ex. A, Hollon's Expert Report]. He has provided expert deposition testimony in a dozen FCRA cases over the past few years. [*Id*. at 42]. In short, Hollon plainly possesses specialized knowledge in the area of credit reporting.

3

Hollon's proposed opinions are that Experian failed to follow reasonable procedures to assure maximum possible accuracy in credit reporting. He further opines that Experian failed to conduct reasonable reinvestigations when consumers like Mr. Huizar filed disputes. In particular, it is Hollon's opinion that Experian specifically ignored persuasive evidence presented to it by Huizar in several dispute letters. According to Hollon, instead of closely reviewing the information provided by Huizar, Experian reflexively and unreasonably relied on the furnisher of the credit information (in this case, Horizon Bank) without doing any actual investigation. In the process, Experian repeatedly reported inaccurate information on Huizar's credit report when it said that Huizar owed a debt to Horizon Bank when in fact that debt had been extinguished by virtue of a state court order following a trial. [*Id.* at 9-23].

## Legal Standard

The treatment of expert testimony changed dramatically when the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) made judges instead of juries the principal gatekeeper of expert testimony. The case led to an important amendment to Federal Rule of Evidence 702. The Rule now authorizes testimony by a witness who is "qualified as an expert by knowledge, skill, experience, training, or education" where (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the

4

principles and methods to the facts of the case." *Downing v. Abbott Labs.*, 48 F.4th 793, 808-09 (7th Cir. 2022) (quoting Fed. R. Evid. 702).

There's a three-step process in determining the admissibility of expert testimony under Rule 702. I must first review the proffered expert's qualifications; then I look at the reliability of the expert's methodology; and finally, I have to determine the relevance of the proposed expert testimony. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). Step one is straight-forward. It requires judges to evaluate, as Rule 702 instructs, the expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

At step two, concerning reliability, courts may evaluate the following non-exhaustive list of factors: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Gopalratnam*, 877 F.3d at 779 (quotation and citation omitted). This *Daubert* standard "applies to all expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

Finally, at step three courts evaluate whether "the expert testimony will assist the trier of fact." *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019). This entails an evaluation of "whether the proposed scientific testimony fits the issue to which the

5

expert is testifying." *Id.* In exercising my discretion as the gatekeeper of expert testimony, I have to be careful that the opinion isn't just some "ipse dixit" of the expert—telling me (or the jury) that something must be true just because the expert says so when it is unmoored from the underlying data. *United States v. Owens*, 18 F.4th 928, 941 n. 5 (7th Cir. 2021).

When challenged, the party seeking to introduce the expert testimony has the burden to show, by a preponderance standard, that the testimony meets the *Daubert* standard. *Downing*, 48 F.4th at 809. Importantly, "[t]he rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F.Supp. 2d 1104, 1110 (N.D. Ill. 2005) (quotation omitted).

## Discussion

### I. Plaintiff's Motion to Supplement

Let's begin with Plaintiff's Motion to Supplement [DE 209] before turning to Experian's more substantive Motion to Exclude. In the Motion to Supplement, Huizar offers to supplement the expert reports of his experts Douglas Hollon and Evan Hendricks with their deposition testimony to cure the issue of the expert reports being unsworn or unverified. [DE 209 at 1]. In response, Experian states that Huizar should have cited the deposition transcripts at the first opportunity during summary judgment briefing and that attempting to cure the unsworn reports now constitutes waiver. [DE 210 at 2].

Experian's motion is exceedingly weak. Both Mr. Hollon and Mr. Hendricks identified their expert reports during their depositions and swore under oath that the expert reports are, in fact, the reports they authored. [DE 209 at 2-3]; [DE 178-3 at 28-29, Hollon Dep. Transcript]; [DE 178-4 at 7-8, Hendricks Dep. Transcript]. Both experts also reaffirmed the positions taken in their reports during their depositions. [DE 209 at 2-3]; [DE 178-3 at 97-111, Hollon Dep. Transcript]; [DE 178-4 at 56-57, Hendricks Dep. Transcript]. Because the reports are authenticated and the opinions therein reaffirmed by Mr. Hollon's and Mr. Hendricks' deposition testimony, I will consider them at summary judgment. *See, e.g.*, *Denney v. Amphenol Corp.*, 2024 WL 3293590, at *28 n.25 (S.D. Ind. July 3, 2024) (explaining that an unsworn expert report was admissible where the expert reaffirmed her opinions in the course of a deposition); *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F.Supp. 2d 1034, 1064–65 (N.D. Iowa 2006) ("[A]n unsworn expert report may be considered at summary judgment where the opinions therein are otherwise adopted or reaffirmed in an admissible affidavit or deposition testimony by the expert.").

## II. Experian's Motion to Exclude

Experian seeks to exclude or limit testimony from Huizar's experts, Douglas Hollon and Evan Hendricks. [DE 177]. Recall that Hollon is the former Experian employee, and Hendricks is a frequent expert employed in FCRA matters. Experian argues that both experts fail to meet Rule 702 standards as "neither expert has identified or applied any reliable principle or method to the facts of the case." [DE 178 at 1].

7

Experian argues that both experts offer only *ipse dixit* and should be excluded entirely. [*Id.* at 2].

### A. Douglas Hollon

Starting with Mr. Hollon, Experian begins by arguing that he is not qualified as an expert on several issues on which he opines. [DE 178 at 6]. First, Experian states that Hollon is unqualified to provide his opinion on the correct interpretation of the Tippecanoe Circuit Court orders which are the subject of this litigation. Experian argues "Mr. Hollon lacks the requisite legal training to interpret the Orders." [*Id.*] In response, Plaintiff states that Hollon "spent over a decade employed by Experian" and "has relied on his experience to offer expert testimony on Credit Reporting issues and testified in 12 FCRA cases." [DE 187 at 4]. While Experian is correct that nothing in Hollon's CV shows that he has legal training, legal expertise is not required to opine on how Experian, a consumer reporting agency (CRA), should have interpreted the Tippecanoe Circuit Court orders. The Seventh Circuit has acknowledged that CRAs can read and understand legal orders. *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 815 (7th Cir. 2023) (citing *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994)). Hollon's CV, included with his report, shows that he worked on credit reporting at Experian for 14 years and has testified as a 30(b)(6) witness on behalf of Experian. [DE 178-1 at 44, Ex. A, Hollon's Expert Report]. Hollon's decade-plus experience working on credit reporting at Experian qualifies him to opine on how Experian would have read and understood the legal orders as well as how reporting should have been conducted

8

following a review of the orders. *Fife v. mPhase Techs., Inc.*, 2014 WL 2514565, at *2 (N.D. Ill. June 4, 2014) ("An expert may be qualified to render opinions based on experience alone."); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 908 (S.D. Ind. 2014) ("In certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony.").

Experian next argues that Hollon is unqualified to opine on whether Experian's processes and procedures resulted in inaccurate, damaging information remaining in Huizar's Experian file. [DE 178 at 7]. Experian states that Mr. Hollon admits he has never worked for a lender or business that assessed consumers' creditworthiness. [*Id.*] Experian also says that "Hollon is not a psychologist or financial advisor" and states that Hollon's resume does not reflect any experience relevant to determining whether a consumer was emotionally or financially harmed because of a credit report. [*Id.*] In response, Huizar states Hollon has already testified that he will not offer opinions on the topic of emotional distress damages. [DE 187 at 6]. Huizar also calls it "common sense" that "charge offs or unpaid balances are damaging." [*Id.* at 5].

The parties agree that Hollon should not offer testimony as to emotional damages and, based on his CV, Hollon has no expertise or experience which would qualify him to testify as an expert with respect to non-emotional damages. As has been done by courts previously, Hollon will not be allowed to offer his opinion as to Huizar's damages. *See, e.g.*, *Nelson v. Experian Info. Sols., Inc.*, 2024 WL 3219180, at *3 (D.S.C. June 27, 2024) (excluding Hollon's opinions regarding plaintiff's emotional damages because

9

"he is not qualified to proffer such opinions," as well as non-emotional damages since "Plaintiff can speak to his own damages and Hollon's recitation of Plaintiff's damages is unhelpful."). As in *Nelson*, because the jury can assess Huizar's own damages testimony and Hollon adds no specialized knowledge or experience related to damages, he will not be allowed to provide expert testimony on Huizar's damages, emotional or otherwise. Accordingly, any statements concerning damages, emotional or otherwise, included in Hollon's report will not be considered by the Court on summary judgment.

Experian's Motion to Exclude also attacks Hollon's methodology and argues that the Hollon Report "fails totally to outline any reliable principles or methods." [DE 178 at 8]. Experian states that Hollon admitted that his expert opinions were based on his experiences and not "studies and analyses." [*Id.* at 9]. In response, Huizar discusses the materials Hollon reviewed in forming his opinions and notes that "Hollon reviewed Experian's ACDV responses to Plaintiff's disputes, the orders of the Indiana State Courts disavowing Horizon's bank debt, and Experian's consumer file records and deposition testimony." [DE 187 at 4]. In the section of his report titled "QUALIFICATIONS AND METHODOLOGIES" Hollon provides a list of the materials he reviewed to prepare his opinions in this matter. [DE 178-1 at 3, Ex. A, Hollon's Expert Report]. In his report, Hollon states that he considered these documents "together with [his] experience and knowledge, in forming the opinions expressed herein[.]" [*Id.*]

10

In my view, Hollon's report shows that he has used reliable principles and methods to form his opinions. The caselaw is clear that when a qualified expert uses their expertise and experience to arrive at an opinion based on an assumed set of relevant facts, that is a reliable methodology. *See, e.g.*, *United States v. Abramson*, 2023 WL 417880, at *4 (N.D. Ill. Jan. 25, 2023) (finding a tax expert's methodology reliable where he applied his knowledge and expertise to the evidence adduced at trial); *Lees v. Carthage Coll.*, 714 F.3d 516, 524 (7th Cir. 2013) (finding an expert's methodology that reviewed witness statements, security protocols, and police reports, and drew on his own experience and expertise, reliable); *Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (finding an expert's testimony was admissible where the expert applied his experience to a review of medical records); *Heckler & Koch, Inc.*, 71 F. Supp. 3d 866, 908 (S.D. Ind. 2014) (explaining that while a factfinder might assign less weight to testimony because it is not based it on analysis of data, the testimony is not inadmissible simply because it is based on personal expertise).

In short, an expert's reliance upon his or her experience to assess the relevant documents has been repeatedly viewed as a reliable methodology in various settings. In this case, Hollon's statement that he has reviewed the information provided "together with his experience and knowledge," is enough to show a reliable methodology in this instance. Hollon applied his experience working on credit reporting at Experian for over a decade to a review of the materials in this case to form an expert opinion on Experian's alleged actions. While not very technical, this is a reliable methodology for

11

forming an expert opinion. As I see it, any shortcomings in Hollon's review of the evidence in this case and the conclusions he has drawn from it are best exposed with the "familiar tools of vigorous cross-examination." *Lapsley v. Xtek, Inc.* 689 F.3d 802, 805 (7th Cir. 2012) (cleaned up).

### B. Evan Hendricks

Turning to Evan Hendricks, Experian argues that Hendricks is unqualified to provide expert opinion on several topics for which he opines. First, Experian argues that, like Hollon, Hendricks is unqualified to provide his opinion regarding how Experian should have interpreted the Tippecanoe Circuit Court orders. Experian asserts that "Mr. Hendricks is not a lawyer, nor does he have any background in the legal field." [DE 178 at 12]. In response, Huizar points out that Mr. Hendricks has authored multiple publications on consumer reporting, has testified before Congress numerous times, and has served as a Fair Credit Reporting Act (FCRA) expert in more than fifty cases nationwide. [DE 187 at 6]. Mr. Hendricks' CV shows that he has researched and written about the FCRA for over three decades while serving as the Editor/Publisher of Privacy Times. [DE 178-2 at 22-26, Ex. B, Hendricks' Expert Report]. Hendricks' CV also shows that he has provided testimony to Congress on issues related to credit reporting more than ten times over the past three decades, has written books on credit reporting, and has given lectures and presentations on credit reporting around the world. [*Id.*] Hendricks' extensive knowledge of credit reporting and credit reporting agencies will be helpful to the trier of fact. And while Experian is correct that Hendricks does not

have a specialized background in law, he is qualified to opine as to how Experian, a consumer reporting agency, should have viewed the legal orders at issue in this case.

Experian also argues that Hendricks is unqualified to offer his opinion on Experian's decision to follow the ACDV process after receiving the court orders or how a particular creditor would view or interpret Experian's reporting. [DE 178 at 12]. Huizar responds that Hendricks' nearly four decades of study, testimony, and publication have provided him with specialized knowledge about the consumer reporting industry. [DE 187 at 7]. I agree with Huizar. Mr. Hendricks' extensive knowledge of the credit reporting industry as reflected by his CV is not limited to Experian. [DE 178-2 at 22-26, Ex. B, Hendricks' Expert Report]. Hendricks has written books and provided congressional testimony on FCRA and credit reporting broadly. Hendricks' CV shows that he has provided testimony before the House Financial Services Committee on the credit disputing process and the impact of credit reports on consumers [*Id.*] Such qualifications provide Hendricks with a foundation to offer his opinion on Experian's decision to follow the ACDV process as well as how a creditor is likely to have viewed Experian's reporting.

Finally, Experian argues that Hendricks is unqualified to provide testimony related to Mr. Huizar's damages. Experian states that "Mr. Hendricks is unqualified to opine on how a particular creditor would view or interpret Experian's reporting." [DE 178 at 12]. Experian also says that Hendricks is not able to calculate FICO scores and that his CV is devoid of any experience in underwriting or consumer lending. [*Id.*]

13

Huizar responds that Hendricks does not provide any FICO scores in his report and has no intention of calculating anyone's FICO score at trial. Instead, Hendricks will simply explain how the system of credit reporting uses FICO scores. [DE 187 at 8]. Indeed, Hendricks has written a book on that very topic. Hendricks' experience working on credit reporting issues readily qualifies him to provide his opinion on how creditors would view Experian's reporting.

      Hendricks' experience and expertise also qualify him to provide his opinion on how Experian's reporting would have impacted Mr. Huizar. In 2003, Hendricks provided testimony to the House Financial Services Subcommittee on Financial Institutions & Consumer Credit regarding "The Role of FCRA in the Credit Granting Process." [DE 178-2 at 23, Ex. B, Hendricks' Expert Report]. In 2010, Hendricks provided testimony to the House Financial Services Committee regarding "Credit Reports and their Impact on Consumers." [*Id*.] Hendricks' expert opinion in this area will help the jury understand how Experian's reporting could have impacted Mr. Huizar and whether it was Experian's reporting (as opposed to some other factor) which harmed Mr. Huizar. *Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Tr.*, 51 F.3d 1319, 1327 (7th Cir. 1995) ("Expert testimony is admissible if the witness has specialized knowledge that will assist the trier of fact to understand the evidence in the case."); *Resol. Tr. Corp. v. Aetna Cas. & Sur. Co. of Illinois*, 831 F. Supp. 610, 616 (N.D. Ill. 1993) ("Clearly, the purpose of expert testimony is to assist the trier of fact to understand, evaluate, and decide complex evidential material.").

Experian points out that Hendricks lacks any experience or expertise in medicine, psychiatry, psychology, or mental health and is unqualified to opine on any emotional harm Plaintiff may have suffered. [DE 178 at 13]. Like Hollon, Hendricks' CV does not show any specialized knowledge or experience related to emotional damages. Huizar's response does not dispute this. Moreover, both parties have cited numerous prior cases in which courts have refused to allow Hendricks to provide expert testimony related to damages. [DE 178 at 13; DE 187 at 7]. To repeat, Hendricks will be allowed to offer his opinion on how creditors would have viewed Experian's reporting. But he will be prohibited from offering opinions on any emotional or psychological harm suffered by Huizar. Any statements concerning emotional damages included in Hendricks' report will not be considered by the Court on summary judgment or the jury at trial.

Experian next goes after the reliability of Hendricks' methodology writing "Mr. Hendricks agreed that his methodology . . . is that he simply takes his experiences, applies that experience to the facts of the case, and then forms his opinions." [DE 178 at 14]. So, what? As I've explained above, an expert's reliance on his experience in a field while reviewing the relevant information is a sufficient methodology. A witness does not need to put forth testimony in a scientific or technical manner to be considered an expert. *Pizel v. Monaco Coach Corp.*, 374 F. Supp. 2d 653, 655 (N.D. Ind. 2005) (citing *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir.2000)). An expert can be qualified to testify based upon personal experience and knowledge, so

15

long as the experience and knowledge is reliable. *Pizel*, 374 F. Supp. 2d at 655 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), and *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). It makes sense that both Hendricks' and Hollon's methodology, applying their experience in the credit reporting field to the details of this case, cannot be easily tested, subjected to peer review, measured against industry standards, etc. *Hoopes v. Gulf Stream Coach, Inc.*, 2016 WL 1165683, at *10 (N.D. Ind. Mar. 25, 2016) (explaining that in some instances expert testimony cannot be mechanically scrutinized and that expert testimony is not unreliable simply because it is founded on experience rather than data). Like Hollon, Hendricks' methodology of applying his experience to the facts and evidence in this case is reliable.

Experian also argues that Hendricks should not be permitted to provide testimony about prior cases, administrative actions, and consent decrees. [DE 178 at 16]. Experian states that this information is entirely unrelated to the reporting at issue in this case. [*Id.*] In response, Plaintiff states that this information is critical for a jury to consider when assessing whether Experian's alleged failures were negligent or willful. [DE 187 at 8]. I agree with Experian. While some background information on credit reporting could be helpful for the jury, the extensive information provided here is unnecessary. Mr. Hendricks' report discusses specific consent decrees entered by Experian over the last few decades which is more likely to confuse the jury than provide helpful background. [DE 178-2 at 11-16, Ex. B, Hendricks' Expert Report]. As Experian points out, courts have routinely barred Hendricks from offering such testimony. [DE

16

178 at 16]. *See also*, *Ferrin v. Experian Info. Sols., Inc.*, 2023 WL 3591931, at *9 (D. Minn. Apr. 24, 2023); *Anderson v. Equifax Info. Servs., LLC*, 2018 WL 1542322, at *7 (D. Kan. Mar. 29, 2018); *Brown v. Vivint Solar, Inc.*, 612 F. Supp. 3d 1337, 1345 (M.D. Fla. 2020).

An information dump from long ago cases will more likely confuse the jury than provide helpful information relevant to this case. In addition, it could convince a jury who might otherwise be disposed to find in favor of Experian to render a verdict against them as punishment for its *prior* behavior. This, of course, would take attention away from the critical questions on which the jury must focus: did Experian report inaccurate information on Huizar's credit report and did it conduct a reasonable investigation and reinvestigation in response to Huizar's various dispute letters? In sum, I am persuaded that, pursuant to Federal Rule of Evidence 403, any probative value that Hendricks' testimony may have about prior cases, administrative actions, or consent decrees is substantially outweighed by the danger of unfair prejudice, confusion of the issues and the needless consumption of time.

Finally, Experian argues that Hendricks should be precluded from testifying about Experian's knowledge, motivations, intentions, objective state of mind, and subjective beliefs. [DE 178 at 17]. Plaintiff responds that "Mr. Hendricks readily admitted he was not testifying as to the state of mind of [Experian]." [DE 187 at 8-9]. Plaintiff also writes "[t]here is no evidence to suggest Mr. Hendricks is testifying or plans to testify to any of the CRAs' state of minds." [*Id.* at 9]. As the parties agree that

17

Mr. Hendricks should not testify as to the CRAs' state of mind, Mr. Hendricks will not be permitted to provide testimony on that topic.

**ACCORDINGLY**:

Plaintiff's Motion to Supplement Expert Reports with Deposition Testimony [DE 209] is **GRANTED**. Experian's Motion to Exclude or Limit the Opinions and Testimony of Plaintiff's Expert Witnesses [DE 177] is **GRANTED IN PART** and **DENIED IN PART**. The opinions and testimony of Plaintiff's expert witnesses will be limited as follows:

1. Mr. Douglas Hollon is **PERMITTED** to provide opinion and testimony as to Experian's ACDV process as well as Experian's interpretation of the relevant court orders.

2. Mr. Douglas Hollon is **NOT PERMITTED** to provide opinion and testimony as to Mr. Huizar's damages, emotional or otherwise.

3. Mr. Evan Hendricks is **PERIMITTED** to provide opinion and testimony regarding Experian's ACDV process as well as Experian's interpretation of the relevant court orders.

4. Mr. Evan Hendricks is **PERIMITTED** to provide opinion and testimony as to how Experian's reporting would be viewed by creditors.

5. Mr. Evan Hendricks is **PERMITTED** to provide opinion and testimony as to Mr. Huizar's non-emotional damages.

6. Mr. Evan Hendricks is **NOT PERMITTED** to provide opinion and testimony as to Mr. Huizar's emotional damages.

7. Mr. Evan Hendricks is **NOT PERMITTED** to provide opinion and testimony about prior cases, administrative actions, and consent decrees.

8. Mr. Evan Hendricks is **NOT PERMITTED** to provide opinion and testimony about Experian's knowledge, motivations, intentions, objective state of mind, and subjective beliefs.

**SO ORDERED**.

ENTERED: November 5, 2025.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT