UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

FABIAN HUIZAR,                    )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        Cause No. 4:22-CV-85-PPS
                                  )
EXPERIAN INFORMATION              )
SOLUTIONS INC.,                   )
                                  )
        Defendant.

**OPINION AND ORDER**

Fabian Huizar purchased an SUV using a loan obtained from Horizon Bank. Huizar eventually fell behind on his car payments which led Horizon to repossess it. But Horizon botched the repossession according to a state court judge which resulted in Huizar obtaining a judgment absolving him of any responsibility to pay his delinquent car bill. Following the judgment, Huizar began to dispute the Horizon debt as it appeared in his consumer reports prepared by the "big three" consumer reporting agencies—Experian, Equifax, and TransUnion.

After seven dispute letters to Experian, none of which resolved to his satisfaction the alleged inaccuracy in his credit report, Huizar turned to the courts. He filed this lawsuit against Experian under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*., seeking to recover damages for what he believes is inaccurate reporting of the Horizon Bank debt in his consumer reports. Huizar and Experian have filed cross motions for summary judgment each seeking judgment in its favor on all claims. [*See*

DE 172; DE 179]. Because there remain genuine issues of material fact about the accuracy of Experian's reporting of Huizar's credit history and the reasonableness of its investigation, both motions for summary judgment will be **DENIED**.

## Factual Background

### <u>Huizar's Car Loan and the Tippecanoe Circuit Court Proceedings</u>

On January 12, 2018, Fabian Huizar used a loan serviced by Horizon Bank to purchase a 2015 Ford Explorer for $22,767.93 for his wife (then his fiancée). [DE 196 at ¶21]; [DE 172-4 at ¶1]. It didn't take Huizar long to get behind in his payments. By July 2018, Huizar and his wife had missed several monthly payments towards the Horizon loan. [DE 196 at ¶21].[1] Because of these missed payments, Horizon employed a repo company to repossess Huizar's car on July 24, 2018. [DE 196 at ¶22]. After the repossession, Huizar called Horizon to negotiate the missed payments and retrieve his car. [DE 190-1 at 1].[2] Instead, Horizon told Huizar it had accelerated his loan, which required him to repay the loan in full before Horizon would return the car. [*Id*.] A couple months later, Horizon sold Huizar's car at an auction for $16,000, which Horizon claimed left a deficiency balance of $7,679.08 on Huizar's loan. [*Id*. at 2]. Thereafter, Horizon demanded Huizar pay the deficiency balance and Huizar responded by demanding the return his vehicle. [DE 172-4 at ¶¶41–42].

---

[1] DE 196 cited throughout the Factual Background is Plaintiff's Response to Defendant's Statement of Undisputed Material Facts.

[2] DE 190-1 cited throughout the Factual Background is Defendant's Response to Plaintiff's Statement of Facts.

Huizar sued Horizon on November 22, 2018, in Tippecanoe County Circuit Court in Indiana concerning the circumstances of Horizon's repossession of Huizar's car. [DE 190-1 at 2]. Huizar prevailed at a February 2020 bench trial, and in a July 7, 2020, order, the Circuit Court held Huizar had "defaulted on the loan and Horizon was entitled to accelerate the loan" but that Horizon's repossession breached the peace. [DE 172-4 at 3-4]. As a result, the Circuit Court ruled in Huizar's favor on his consumer protection claims and awarded damages. [DE 172-4 at 10]. Importantly, as another form of relief, the Circuit Court "eliminate[d] [Horizon's] deficiency judgment" and therefore reduced Huizar's awarded damages by the $7,679.08 deficiency judgment amount. [DE 172-4 at 9]. The judge also denied Horizon's counterclaim for breach of contract and deficiency judgment. [DE 172-4 at 10–11]. Horizon received the Circuit Court order sometime before August 6, 2020. [DE 190-1 at 15].

The Circuit Court later entered a Final Appealable Order on September 21, 2020, that modified the July 7, 2020, order to dismiss one of Huizar's claims and reduce his total awarded damages. [*See* DE 182-8]. The Final Appealable Order did not amend, and in fact restated, the conclusions of law in the July 7, 2020, order that eliminated Horizon's deficiency judgment and reduced Huizar's damages by that sum. [*Id.*] In sum, excluding attorney's fees, the Court awarded Huizar damages in the amount of $4,580.03. [*Id.* at 11]. Horizon appealed, and on October 13, 2021, the Indiana Court of Appeals affirmed all but a portion of the Circuit Court's Final Appealable Order

concerning attorney's fees awarded to Huizar. [DE 196 at ¶26; *see also Bank v. Huizar*, 178 N.E.3d 326 (Ind. Ct. App. 2021)].

_Huizar's Dispute Letters to Experian_

Immediately after obtaining the July 7, 2020 order, Huizar mailed his first dispute letter to Experian concerning the Horizon debt. [DE 190-1 at 2]; [DE 172-5, Ex. 6]. The parties refer to debts reported in a credit report as a "tradeline" which is evidently a term of art in the credit reporting business. I'll follow the parties' lead with use of that term. Anyway, Huizar's July 8, 2020, dispute letter stated, "I do not owe anything to Horizon" and "It is showing as a balance of $7,594 but I don't owe anything." [DE 172-5 at 1]. As shown above, what Huizar said in the letter was undoubtedly true—he didn't in fact owe Horizon any money by virtue of the state court judgment he had received against Horizon. Huizar's letter went on to explain that he was worried he would not be able to buy a home for his family because of the reporting and that he attached proof showing he doesn't owe money to Horizon. [*Id.*] The dispute letter included a copy of the judgment that was entered against Horizon. [*Id.* at 8-18].

After receiving Huizar's July 2020 dispute, Experian sent an Automated Credit Dispute Verification (ACDV) form to Horizon for completion. [DE 196 at 17]. This is a form sent from the credit reporting agencies to the furnishers of the information to verify the accuracy of a debt. In August 2020, Experian received Horizon's response indicating that Huizar owed $7,641 and that his account was "charged off." [DE 190-1 at 4]. After receiving the completed ACDV form from Horizon, Experian sent the dispute

results to Huizar showing an outstanding balance of $7,641 and stating that the account was "charged off" with $22,558 being written off. [*Id.*]; [DE 172-9, Ex. 20]. The dispute results did not mention the judgment in Huizar's favor. [DE 190-1 at 4]; [DE 172-9, Ex. 20].

In November 2020, Huizar mailed his second dispute letter to Experian contesting the Horizon tradeline. [DE 190-1 at 5]. In this letter, Huizar notes that the balance "went up since last time" and "[i]f you look at the court records, you'll see I don't owe this." [*Id.*] Upon receiving this dispute, Experian again engaged Horizon in the ACDV process. Horizon submitted an ACDV form to Experian indicating that the past due balance was $7,875 and that the account was "charged off." [*Id.*]; [DE 172-12, Ex. 28]. Experian again sent dispute results to Huizar indicating that the information on the account had been verified as accurate. [DE 190-1 at 6]; [DE 172-13, Ex. 30]. Again, the dispute results did not mention the judgment in favor of Mr. Huizar. [DE 190-1 at 6]; [DE 172-13, Ex. 30].

Continuing with this dance, Huizar mailed another dispute letter to Experian in January 2021 again challenging the Horizon tradeline. [DE 190-1 at 6]; [DE 172-15, Ex. 38]. In this letter Huizar stated "[t]he Horizon account is still incorrect." Huizar also complained that Experian was "still including incorrect information even after I explained." [DE 172-15 at 1, Ex. 38]. Predictably, Experian again engaged in the ACDV process with Horizon to address the dispute. [DE 190-1 at 6]. In February 2021, Horizon submitted an ACDV response to Experian indicating that Huizar owed $7,920 and that

the account was charged off. [*Id.* at 7]; [DE 172-17, Ex. 42]. In February 2021, Experian sent the dispute results to Huizar. [DE 190-1 at 7]; [DE 172-18, Ex. 44]. The dispute results again made no mention of the judgment in Huizar's favor. [DE 190-1 at 7]; [DE 172-18, Ex. 44].

In November 2021, Huizar sent another dispute letter to Experian challenging the accuracy of the Horizon tradeline. [DE 190-1 at 7-8]; [DE 172-23, Ex. 56]. In this one, Huizar told Experian that "I've disputed with you multiple times . . . [p]lease help me." [DE 172-23 at 1]. Huizar also stated that the account shouldn't be reporting because it was "wiped away by a Court of Law." [*Id.*] Huizar included an account info screenshot showing a Horizon Bank balance of $8,388. [*Id.*] The account info screenshot states "$22,588 written off" and "$8,388 past due as of Nov 2021." [*Id.*] In December 2021, Experian provided Huizar with dispute results indicating no balance but showing that Horizon had charged off $22,558. [DE 190-1 at 8]; [DE 172-26, Ex. 64; DE 172-27, Ex. 65]. The dispute results again showed no mention of the judgment in Huizar's favor. [DE 172-26, Ex. 64; DE 172-27, Ex. 65].

In December 2021, Huizar mailed yet another dispute to Experian regarding the Horizon tradeline. [DE 190-1 at 8]; [DE 172-29, Ex. 71]. In this letter, Huizar told Experian that Horizon "credited the amount they claim I still owed." [DE 172-29, Ex. 71]. Huizar also states "[n]ow it's showing as being written off." [*Id.* at 1]. Experian again engaged in the ACDV process with Horizon and in January 2022, Horizon submitted an ACDV response to Experian indicating that Huizar's account was charged

6

off, without further context. [DE 190-1 at 9]; [DE 172-31, Ex. 75]. Yet again, there was no mention of the judgment in favor of Mr. Huizar. [DE 190-1 at 9].

In April 2022, a balance and amount past due of $8,572 somehow returned to the Horizon tradeline in Huizar's Experian file. [DE 190-1 at 9]; [DE 172-35 at 7, Ex. 79]. Huizar again sent a dispute letter to Experian regarding the Horizon tradeline stating "[t]here should be no balance, no past due amount, and this should not be reporting as a [c]harge-off." [DE 190-1 at 9]; [DE 172-36 at 1, Ex. 82]. The Parties dispute whether Huizar's April 2022 dispute letter reached Experian with Experian claiming that "the last dispute letter that Experian received from Plaintiff was processed in January 2022." [DE 196 at ¶ 50]. Huizar has included a proof of delivery from the United States Postal Service showing that his April 2022 letter was, in fact, received by Experian. [DE 172-37, Ex. 83]. While it is unclear what happened to Huizar's April 2022 letter after Experian received it, the evidence in the record shows that Huizar sent it, and Experian received it.

Finally, in July 2022, Huizar sent another dispute letter to Experian disputing the Horizon tradeline. [DE 190-1 at 10]; [DE 172-40, Ex. 91]. In this final letter Huizar again states "[t]here should be no balance, no amount past due, and this should not be reporting as a [c]harge off." [DE 172-40 at 1, Ex. 91]. In response to this dispute, Experian again engaged in the ACDV process with Horizon. [DE 190-1 at 11]. On August 4, 2022, Horizon sent an ACDV form to Experian which listed the balance on the account as $0. [*Id.*]; [DE 172-41, Ex. 93]. The ACDV form again made no mention of

7

the judgment in favor of Huizar. [DE 172-41, Ex. 93]. On August 4, 2022, Horizon also submitted an Automated Universal Data (AUD) form to Experian which updated the Horizon tradeline to indicate a $0 balance.[3] [DE 190-1 at 11]; [DE 172-42, Ex. 94]. On August 9, 2022, Experian sent dispute results to Huizar indicating that the Horizon account was paid and closed, with $22,588 written off. [DE 190-1 at 11]; [DE 172-44, Ex. 97].

## Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). On a motion for summary judgment, all facts and reasonable inferences are construed in a light most favorable to the non-moving party. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 873 (7th Cir. 2025).

## Discussion

Congress enacted the Fair Credit Reporting Act, codified at 15 U.S.C. § 1681 *et seq.*, "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52

---

[3] AUDs are initiated by the data furnisher to request out-of-cycle credit history updates. [DE 190-1 at 11]. *See also*, https://www.e-oscar.org/gettingstarted (last visited 11/5/25).

(2007). As collectors and distributors of consumer credit information, Consumer Reporting Agencies ("CRAs") are important players within the FCRA's statutory scheme. The FCRA defines CRAs as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). There is no dispute that Experian is a CRA.

Huizar alleges Experian violated three provisions of the FCRA: (1) 15 U.S.C. § 1681e(b); (2) 15 U.S.C. § 1681i(a); and (3) 15 U.S.C. § 1681i(c). I will address Huizar's claims under § 1681i(a) and § 1681e(b) together because those theories overlap in many ways. I will then turn to Huizar's claim under § 1681i(c) relating to whether Experian include a notification of Huizar's dispute in subsequent reports after receiving Huizar's disputes letters.

## I.    Accuracy of Huizar's Consumer Report

First, "[a] threshold requirement for claims under both [§ 1681e(b) and § 1681i] is that there must be an inaccuracy in the consumer's credit report." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021); *Walton v. BMO Harris Bank N.A.*, 761 Fed.Appx. 589, 591 (7th Cir. 2019) ("Although the reasonableness of a credit reporting agency's procedures under § 1681e(b) is not typically a summary-judgment question, [a CRA] cannot be liable as a threshold matter if it did not report inaccurate

9

information."). Though left undefined by the FCRA, the Seventh Circuit defines "accuracy" to encompass "both truth and completeness—a report that is misleading or materially incomplete is inaccurate." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023). Indeed, "[a] credit report is inaccurate under § 1681e(b) and § 1681i(a) if it omits accurate information that could reasonably be expected to adversely affect a consumer's creditworthiness." *Id.* at 812. And as is important here, "the information needs to be factually inaccurate, not legally inaccurate." *Thorton v. Experian Info. Sols., Inc.*, 2025 WL 1951743, at *3 (N.D. Ill. July 16, 2025) (citing *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020)).

Huizar alleges his Experian credit reports contained two categories of inaccuracies. First, Huizar points to inaccurate balance and amount past due figures for his Horizon account. Second, Huizar argues Experian's reporting of the Horizon account as "charged off" and with a listed charge off amount was inaccurate or at least misleading. Experian responds that its reports accurately reported Huizar's late payment history and the fact that Horizon had written off the debt (reflected by the "charged off" notation). According to Experian, federal regulations *obligated* Horizon to report Huizar's account as charged off once his payments were 120 days past due. In his response, Huizar says he "is not suing over late payment history." [DE 194 at 9].

Confoundingly, Huizar has provided the Court with only one copy of a credit report he says was inaccurate. Instead, the Parties' designated evidence primarily consists of Huizar's dispute letters (which purportedly cite and sometimes include

screenshots of his credit reports), Horizon's ACDV responses, and Experian's responses to his disputes.

I begin with Huizar's alleged inaccuracies concerning the balance and amount past due figures for his Horizon account. Huizar says his July 2020, November 2020, and January 2021 disputes highlighted these inaccurate balance amounts and balance past due figures on his credit reports. Experian's August 7, 2020, response lists a $7,641 balance as past due for his Horizon account. [DE 172-9 at 2.] The ACDV forms and Experian's response to his November 2020 dispute list the balance amount on his Horizon account as $7,875 [DE 172-13, Ex. 30]. The ACDV forms and Experian's response to his January 2021 report list his balance past due as $7,920 for his Horizon account. [DE 172-18, Ex. 44].

Experian argues that Huizar's claims of inaccurate balance and balance past due figures fail because he asked Experian to resolve a legal dispute instead of a factual one. In response, Huizar argues the state court proceedings resolved the question of whether he owed a balance on his Horizon account as a matter of law. CRAs are statutorily obligated to investigate and ensure protection against "factual inaccuracies" but addressing "legal inaccuracies" is "outside the competency of the consumer reporting agencies." *Chuluunbat*, 4 F.4th at 567. "The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Id.* "In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an

account or incurred a payment." *Id.* at 568.

At first glance, Huizar's argument that Experian's listing of a balance amount and balance past due on his credit reports was inaccurate because of the state court orders seems a "paradigmatic" example of a legal dispute because he asks Experian to determine that his debt was invalid as a matter of law. But *Chuluunbat* recognized a key carve out: "[a] legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter." *Id.* at 568. Let's suppose Huizar had never taken Horizon to court, and he filed a dispute letter with Experian that he didn't owe Horizon any money because Horizon had breached the peace during the repossession. That would be an unresolved *legal* question that Experian would have no duty to report on. By contrast, once a legal dispute is resolved—as in this case—with a finding the debt is no longer valid, that becomes a factual matter that Experian must report accurately.

Experian argues that following the July 7, 2020 order, the case continued to be litigated on appeal and that the final judgment in the case was not entered until July 2022 shortly before this litigation began. [DE 181 at 13]. That's just not true; final judgment was entered by the Tippecanoe County Circuit Court. In any event, Experian cannot simply throw its hands up when it receives a court order. *Chaitoff*, 79 F.4th at 815 (noting "CRAs can read and understand legal documents"). Huizar did exactly what the Seventh Circuit advised in *Chuluunbat*: "If the plaintiffs presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts

12

have been adjudicated, the investigation may have been factual in nature." 4 F.4th at 569.

Although Huizar previously owed money to Horizon, beginning on July 7, 2020, the state court orders "eliminate[d]" his obligation to make future payments towards that debt. In other words, *Huizar no longer owed money to Horizon* after that date. Under these circumstances, the Court finds there exists a triable issue of fact as to whether the Experian reports that continued to report a balance *currently* due on the Horizon account after the July 7, 2020, Order created a materially misleading impression about Huizar's payment and credit history. Huizar has not provided sufficient evidence to establish this theory of inaccuracy as a matter of law at this juncture.

In addition, Huizar argues that Experian's reporting of his Horizon account as "charged off" was inaccurate and that the amount of the charge off ($22,558) was inaccurate because it did not include the $16,000 Horizon recovered from the auction of his car. Based on the Court's own review of the record, Experian's February 2021, response to Huizar's January 2021 dispute listed a charge off and written off amount of $22,558 for his Horizon account. [DE 172-18, Ex. 44]. Moreover, it was not until August 2022 that Experian reported Huizar's Horizon account as having a $0 balance. [DE 172-44, Ex. 97].

Experian's reporting of Huizar's account as "charged off" and with a charge off amount presents a different question of accuracy than Experian's reporting of Huizar's balance amount and balance past due because charge off reporting does not necessarily

reflect a *current* debt. Instead, "charge off" refers to "a creditor's decision '[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Borowski v. Ally Financial Inc.*, 2023 WL 4207784, at *3 (E.D. Wis. June 27, 2023) (citing Black's Law Dictionary (11th ed. 2019)). After all, "a credit report is intended to include more than a person's current debt; it also includes bill-payment history and other information that a reasonable lender might consider important in deciding whether and at what rate to extend credit." *Herrell*, 218 F.Supp.3d at 792. Indeed, Huizar does not dispute that he missed *previous* payments. [DE 196 at 11].

Huizar argues Experian's reporting of his Horizon loan as charged off and the amount of the charge off were both inaccurate. These theories of inaccuracy present different factual questions. On the one hand, I find that Experian has satisfied its burden on summary judgment to establish that its mere fact of reporting the Horizon account as charged off (setting aside the amount and when) is not inaccurate under the FCRA. It is undisputed that Horizon did in fact charge off Huizar's loan. Huizar's last payment occurred in June 2018, and he concedes he did not repay in full Horizon's loan. Moreover, Horizon's sale of his car at an auction did not recover the full amount of the loan to Huizar. And unlike the state court orders that "eliminated" his deficiency owed to Horizon, Huizar points to no language (nor could he) in the state court orders that held as a matter of law Horizon could not report the account as charged off.

On the other hand, there is a triable question of fact on the accuracy of Experian's reporting the amount of the charge off on Huizar's credit reports. Experian reported a

$22,558 charge off amount on its reinvestigation responses to Huizar's disputes. [DE 172-13; DE 172-18]. Huizar says this figure does not account for the approximately $16,000 Horizon recovered in the sale of his vehicle at a private auction on September 6, 2018. [DE 190-1 at 2.] Experian fails to provide a fulsome response on this point. One can imagine how a charge off amount of over $22,000 on a credit report instead of roughly $7,000 could negatively impact Huizar's credit score. But Huizar's briefing on this point falls short to conclusively establish the point. This will be another factual question for trial.

## II.    Reasonableness of Experian's Conduct Under §1681i(a) and § 1681e(b)

After establishing an inaccuracy, "a CRA's liability under both § 1681e(b) and § 1681i(a) turns on whether a CRA acted reasonably." *Chaitoff*, 79 F.4th at 816. Section 1681e(b) of the FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). By contrast, section 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation" to determine the accuracy of the disputed information. 15 U.S.C. § 1681i(a)(1)(A).

While both claims require evaluation of the reasonableness of the CRA's conduct, they differ in their scope and requirements. The Seventh Circuit has noted that "reasonable procedures under § 1681e(b) are not proof of a reasonable *reinvestigation* under § 1681i(a)." *Chaitoff*, 79 F.4th at 817 (emphasis added). This makes sense given that the purpose of § 1681i(a) is to provide an avenue to dispute purportedly incorrect

15

information that cleared initial screening and ended up on a consumer's report. Thus, the Seventh Circuit recognizes that "§ 1681i(a)'s reinvestigation requirement mandates a more thorough investigation than § 1681e(b)." *Id.* at 818.

Because this dispute largely focuses on Experian's reinvestigation process, I'll begin by addressing the reasonableness of Experian's reinvestigation process under §1681i(a). But to be clear, Huizar's complaint about Experian's handling of the state court order and its use of the ACDV process undergird his claims of both an unreasonable reinvestigation under § 1681i(a) and a procedure ill designed to assure maximum possible accuracy under § 1681e(b). [DE 176 at 17-24]. As such, my discussion of each section of the statute will be related.

### a.   Reasonableness of Reinvestigation (15 U.S.C. § 1681i(a))

The FCRA provides a process for consumers to notify a CRA, such as Experian, that they dispute the accuracy or completeness of their consumer report. As mentioned, the CRA then must conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate," 15 U.S.C. § 1681i(a)(1)(A), including by considering "all relevant information submitted by the consumer." *Id.* § 1681i(a)(4). The cost benefit analysis for the reasonableness of a CRA's reinvestigation is different because CRA's that receive notice of a dispute can "target its resources in a more efficient manner and conduct a more thorough investigation." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994). Thus, while the "parameters of a reasonable investigation will often depend on the circumstances of a particular dispute, it is clear that a reasonable

16

reinvestigation must mean more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." *Chaitoff*, 79 F.4th at 818 (citation omitted).

Here, Huizar disputed the information contained in the Horizon tradeline of his Experian consumer report on seven different occasions between 2020 and 2022. [DE 190-1 at 2-11]. Recall that on six of those occasions (not counting the April 2022 dispute which Experian says it never received) Experian engaged the ACDV process to reinvestigate the disputes. [*Id*.] What does this actually mean? Teresa Iwanski, a Senior Litigation Analyst for Experian, helped to explain. She testified that when Experian is notified that a consumer believes information in their credit file is inaccurate Experian will initiate its reinvestigation process. [DE 182-1, Ex. A, Iwanski Decl.¶ 18]. As part of this process Experian will first consider and review all relevant information provided by the consumer to properly identify the consumer and the items that are believed to be inaccurate, along with the nature of the inaccuracy. [*Id*.] Iwanski states that if the consumer provides supporting documentation with the dispute, an Experian agent will review the documentation to determine whether the supporting documents are sufficient to delete or update the account as requested by the consumer, or whether an internal policy allows Experian to make the requested update. [*Id*.]

So, was Experian's reinvestigation process reasonable in this case? Recall that Huizar provided Experian with the Tippecanoe Circuit Court Order with his first

dispute. [DE 172-5 at 8-18, Ex. 6]. Huizar asserts that "[a]ll Experian had to do was read the Judgment to determine that Mr. Huizar owed nothing, and the credit reporting was inaccurate." [DE 176 at 12]. Viewing the evidence of Experian's handling of the court order in a light most favorable to Experian, there is a genuine question as to whether it should have taken action to modify the information provided by Horizon upon receiving the court order.

A quick review of the order shows that it's not entirely clear how Huizar's debt to Horizon should have been reported after the judgment in Huizar's favor. The "Findings of Fact" section of the order acknowledges that Huizar and his wife (then fiancée) fell behind on their car payments. [DE 172-4 at 1-3, Ex. 4]. The "Conclusions of Law" section of the order states that "Huizar defaulted on the loan and Horizon was entitled to accelerate the loan." [*Id*. at 3]. Conversely, the order also states that "Horizon failed to act in a commercially reasonable manner during the collection process and . . . [a]s result, the Court hereby restrains Horizon from collecting a deficiency judgment." [*Id*. at 9]. The order makes it clear that Huizar never paid the $7,679.08 he owed on the SUV, but it also makes it clear that he was no longer required to. In other words, the debt was extinguished. *Id.*

The question of how this should be reported in a consumer report presents a difficult conundrum. On the one hand, obtaining a favorable judgment doesn't make a delinquent borrower automatically creditworthy. Indeed, there's no dispute that Huizar repeatedly *failed to pay his bills.* That seems like something a would-be credit provider

18

might want to know about Huizar. On the other hand, a consumer's credit report should not reflect an amount owed when the consumer—by virtue of a judgment—in fact no longer owes the money.

All of this is to say that reasonable minds could disagree as to whether the judgment was enough that Experian should have changed its reporting, and that is enough to raise a genuine issue of material fact. *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023) ("A genuine issue of material fact exists when, based on the evidence, a jury could find for the non-moving party."); *Brock v. City of Belleville*, 2018 WL 2320511, at *1 (S.D. Ill. May 22, 2018) (explaining that a genuine issue of material fact exists where a fair-minded jury could return a verdict for the nonmoving party on the evidence presented.).

Moving on to Experian's ACDV process, Iwanski explains that if the supporting documentation from the consumer is not sufficient to delete or update the account, Experian then contacts the data furnisher—Horizon Bank in this case—through an Automated Consumer Dispute Verification ("ACDV") form sent through an online platform called e-Oscar. [DE 181-1, Ex. A, Iwanski Decl.¶ 18]. The purpose of the ACDV form is to request that the data furnisher investigate and verify or update the account. [*Id*.] Presented with a judgment that, arguably, makes it unclear whether the information provided by Horizon should be deleted or changed, Experian moved forward with its ACDV process.

In his briefing, Huizar argues that Experian's ACDV process constituted an

unreasonable reinvestigation because it did nothing more than parrot back whatever Horizon included in its ACDV forms. [DE 176 at 11]. As I've stated, the judgment made clear that Huizar was no longer on the hook to pay Horizon, but it didn't make clear that Horizon's reporting was inaccurate such that it should have been deleted or changed. In that situation, it seems reasonable to check with Horizon and see what their investigation turns up. However, Huizar disputed the Horizon tradeline in his consumer report on *seven different occasions* between 2020 and 2022 and every single time Experian did nothing but engage in the same ACDV process. As one court put it, the ACDV process is not *per se* reasonable in every circumstance. *Dulworth v. Experian Info. Sols. Inc.*, 2024 WL 2319958, at *16 (S.D. Ind. May 22, 2024).

This is one of those cases. A reasonable juror could conclude that Experian's reflexive reliance on the ACDV process is precisely the type of "cursory investigation" that has been deemed by the Seventh Circuit as impermissible. *Chaitoff*, 79 F.4th at 818 (citation omitted). This is especially true in the face of the Tippecanoe Circuit Court Order showing that Huizar no longer owed the debt. As the Seventh Circuit noted, "it is disputable whether Experian's reliance on an ACDV response that conflicted with other documents in its possession amounted to a reasonable reinvestigation." *Id.* at 821. *See also*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946 (11th Cir. 2021).

While, as pointed out by Experian, the ACDV process has been found reasonable in some instances, a reasonable reinvestigation under § 1681i(a) requires more of a CRA than "merely parroting information." *Moran v. Embark Card Servs., LLC*, 2025 WL

20

2803261, at *4 (N.D. Ill. Oct. 2, 2025) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). Parroting information from Horizon is exactly what Huizar claims Experian did in response to each of his disputes. [DE 176 at 11].

To support his position that a reasonable reinvestigation did not take place, Huizar points to deposition testimony from Experian dispute agents Margaret Akpan, Cheryl Beste, Sam White, Jodi Grimes, and Blanca Reyes. [DE 176 at 5-10]. Margaret Akpan testified during her deposition that she noted what Huizar was disputing, selected a dispute code and dispute reason, if any, and sent that data to the data furnisher. [DE 176 at 5]; [DE 175-1, Ex. 104, Akpan Dep. at 89:16-21]. Akpan testified that Experian has never allowed her to determine whether disputed information is accurate or inaccurate. [DE 176 at 6]; [DE 175-1, Ex. 104, Akpan Dep. at 91:7-12]. Huizar also points out the fact that Akpan acknowledged that she reviewed the July 7, 2020, order but did not "fix" the disputed information in Huizar's file because she was following Experian's policies and procedures. [DE 176 at 6]; [DE 175-1, Ex. 104, Akpan Dep. at 108:20-109:5]. Akpan testified that she would have fixed the information if Experian allowed her to. [DE 176 at 6]; [DE 175-1, Ex. 104, Akpan Dep. at 97:8-10].

Cheryl Beste, a Senior Regulatory Agent at Experian, testified that she has worked as an ACDV operator with Experian.[4]  Similar to Akpan, Beste testified that her role is to review information from a consumer's dispute and process that dispute by

---

[4] Although Ms. Akpan's title is "Senior Regulatory Agent" she testified that her role fits the definition of an "ACDV operator" used during her deposition. [DE 175-2, Ex. 105, Beste Dep. at 18:1-18].

selecting dispute codes and sending it off to the furnisher to determine whether information is accurate or not. [DE 176 at 7]; [DE 175-2, Ex. 105, Beste Dep. at 171:1-8]. Beste testified that she has no training regarding a court order or what effect a court order or judgment has on a debt. [DE 176 at 7]; [DE 175-2, Ex. 105, Beste Dep. at 183:11-22].

Sam White, another ACDV operator for Experian, testified that he has not received training or information about courts orders or how to interpret them. [DE 176 at 9]; [DE 175-4, Ex. 107, White Dep. at 65:24-66:11]. White also testified that verifying a judgment would be a reasonable thing to do and that it would be unreasonable for ACDV operators not to forward court orders to counsel or other internal departments that handle such documents. [DE 176 at 9]; [DE 175-4, Ex. 107, White Dep. at 62:17-25; 63:21-64:8].

Finally, Huizar points to the deposition testimony of longtime Experian employees Jodi Grimes and Blanca Reyes to support his claim that Experian's reinvestigation process is unreasonable. Grimes testified that she worked at Experian for 33 years. [DE 176 at 9]; [DE 175-5, Ex. 108, Grimes Dep. at 38:7-13]. Grimes stated that once the ACDV form is received from the data furnisher, she is not aware of anything else Experian agents do other than processing the information received from the furnisher and sending the results to the consumer. [DE 176 at 9]; [DE 175-5, Ex. 108, Grimes Dep. at 36:19-37:18]. Blanca Reyes testified that she worked for Experian for 23 years. [DE 176 at 9]; [DE 175-8, Ex. 118, Reyes Dep. at 29:10-12]. Reyes explained that

22

she was an agent in Experian's "back-end" department which receives the completed ACDV from the furnisher. [DE 176 at 9]; [DE 175-8, Ex. 118, Reyes Dep. at 29:13-19]. Reyes testified that Experian's back-end department manually enters the information received from the furnisher's ACDV form into Experian's s file and then sends a result to the consumer. [DE 176 at 10]; [DE 175-8, Ex. 118, Reyes Dep. at 29:16-25]. Reyes stated testified that she doesn't do any investigations. [DE 176 at 10]; [DE 175-8, Ex. 118, Reyes Dep. at 30:1-6].

The testimony Huizar has pointed to in the record illustrates an ACDV process which is highly deferential to the data furnisher. However, I am not convinced that this proves as a matter of law that Experian's reinvestigation process is unreasonable. Even assuming that the ACDV process led to a consumer report that contained an inaccuracy, that fact alone does not mean that the procedures in place are unreasonable. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) ("[T]he FCRA does not require unfailing accuracy from consumer reporting agencies."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information in the consumer's credit report."). The evidence in the record raises a question of fact as to whether Experian engaged in a reasonable reinvestigation when handling Huizar's disputes. Whether it was reasonable for Experian to rely completely on information from Horizon in the face of numerous disputes and a court order is a genuine issue of material fact.

Nothing in *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020), a case relied on by Experian, mandates a different result. For starters, *Denan* is readily distinguishable from this case. In *Denan*, consumers who borrowed from Indian tribes at interest rates prohibited by state usury laws contended that their credit reports were inaccurate because they reported the debts even though the debts were (in their view) uncollectible since they violated state law. *Denan*, 959 F.3d at 292-93. In *Denan*, unlike in our case, no court had answered the question as to whether the loans were invalid. Indeed, that's what makes *Denan* actually cut against Experian's position. As the Seventh Circuit noted in that case: "[i]f a court had ruled the loans invalid and Trans Union had continued to report it as a valid debt, then plaintiffs would have grounds for a potential FCRA claim." *Id.* at 296. That describes exactly what happened to Huizar; essentially, the state court in this case ruled that Horizon's loans were no longer valid. So, far from supporting Experian, *Denan* actually props up Huizar's argument.

In sum, a reasonable jury could conclude that a procedure other than the ACDV process continually used by Experian could have uncovered an inaccuracy in the Horizon tradeline. While neither party has definitively shown that Experian's repeated use of the ACDV process was an unreasonable reinvestigation of the disputes as a matter of law, they have raised it as a genuine issue of material fact which should be decided at trial.

    **b.  Reasonableness of Procedures to Assure Maximum Possible Accuracy (15 U.S.C. § 1681e(b))**

24

"The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver*, 390 F.3d at 971. The reasonableness of a CRA's procedures does not turn solely on whether a consumer's report contains an inaccuracy. Indeed, "a mistake does not render [the CRA's] procedures unreasonable." *Id.* at 972. CRA's are permitted to rely upon information "received from a source it reasonably believes is reputable . . . unless the agency receives notice of systemic problems with its procedures." *Id.* Given the volume of credit information and disputes CRAs process daily, the Seventh Circuit recognizes that "[w]hether a CRA's procedures are reasonable turns, predictably, on balancing the costs of a marginal return to accuracy against the potential harm to consumers from declining to incur those costs." *Chaitoff*, 79 F.4th at 817.

Section 1681e(b) states:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

In its brief in support of its motion for summary judgement, Experian lays out its procedures. Experian starts by describing its procedures for determining which financial institutions will be allowed to provide it with information about creditors. Experian explains that it obtains and reports information from financial institutions, only after first investigating them to ensure they are reputable and understand their obligations as a furnisher under FCRA. [DE 181 at 4]; [DE 182-1, Ex. A, Iwanski Decl.

25

¶7]. Experian explains that furnishers must complete Experian's on-boarding process and must execute contracts agreeing to comply with the obligations imposed by FCRA to furnish accurate information and follow industry-reporting standards. [DE 181 at 5]. This element of Experian's process primarily concerns the formation of its relationship with furnishers and the reasonableness of this part of Experian's procedures are unchallenged by Huizar.

Like his claim of an unreasonable reinvestigation under §1681i(a), Huizar's issues with Experian's procedures to ensure "maximum possible accuracy" focus on Experian's reinvestigation process. Nowhere in his briefing does Huizar allege that Experian's acceptance of Horizon as a data furnisher resulted from an unreasonable process or procedure. Huizar takes issue with Experian's use of the ACDV process in its reinvestigation procedures arguing that "[t]he ACDV system is insufficient as a reinvestigation by any CRA." [DE 176 at 1].

Huizar's complaints regarding Experian's failure to act on the Tippecanoe Circuit Court order and its use of the ACDV process all take place after his first dispute. *Young v. Experian Info. Sols., Inc.*, 776 F. Supp. 3d 721, 739 (N.D. Ill. 2025) ("the § 1681e(b) inquiry concerns the steps the CRA takes *before* consumers dispute the accuracy or completeness of the report; the matter of the CRA's reasonableness in responding *after* a consumer has pointed out an inaccuracy is considered under the 'reasonable reinvestigation' provision").

As Experian explains, Horizon Bank is a legitimate financial institution which

26

Experian had no reason to suspect was providing it with inaccurate reporting. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (explaining that requiring CRAs to engage in background research on information furnished by financial institutions would balloon the costs of their services, which in turn would be passed to consumers). Huizar makes no argument in his summary judgment briefing and points to no evidence suggesting that, prior to his first dispute, Experian had reason to doubt Horizon's reporting.

Given Horizon's demonstrated reliability, it was reasonable for Experian to trust that Horizon's original information was complete and accurate. *Sarver*, 390 F.3d at 972 (CRA's procedures not unreasonable unless the agency has reason to believe a furnisher's information is unreliable). However, once Experian was put on notice by way of Huizar's first dispute (and the Tippecanoe Circuit Court Order) that there was reason to believe that Horizon's reporting was unreliable, it is unclear whether there were reasonable procedures in place to ensure the maximum possible accuracy of Huizar's file. *Chaitoff*, 79 F.4th at 817 ("Whether a CRA's procedures are reasonable turns, predictably, on balancing the costs of a marginal return to accuracy against the potential harm to consumers from declining to incur those costs.").

As Huizar states, his initial dispute of the Horizon tradeline "put Experian on notice that Horizon was not a reliable source, as the Judgment provided to it directly contradicted the information Horizon supplied to Experian." [DE 176 at 3]. And, as explained by Experian dispute agents during their depositions, there was potentially

more Experian could have done to ensure maximum possible accuracy. Potential procedures to ensure maximum possible accuracy, as pointed out by Experian dispute agents, include allowing dispute agents to review public court dockets to verify an order or allowing dispute agents to forward court orders to an internal legal department for review. [DE 176 at 5-10]; [DE 175-1, Ex. 104, Akpan Dep at 91:7-12]; [DE 175-2, Ex. 105, Beste Dep at 185:13-24]; [DE 175-4, Ex. 107, White Dep at Ex. 63:21-64:14]; [DE 175-5, Ex. 108, Grimes Dep at 36:19-23]; [DE 175-8, Ex. 118, Reyes Dep at 30:1-6]. Because Experian failed to do anything, other than repeatedly engage in the ACDV process, after being put on notice that Horizon's reporting contained potential inaccuracies, there is a genuine issue of material fact as to whether Experian has in place reasonable procedures to assure maximum possible accuracy of the information in a consumer's file.

For these reasons, summary judgment on this point in not warranted in favor of Huizar or Experian. *See, e.g.*, *McClelland v. Experian Info. Sols., Inc.*, 2006 WL 2191973, at *3 (N.D. Ill. July 28, 2006) (explaining that in most cases, the reasonableness of a CRA's procedures is a question for the jury); *Quinn v. Experian Sols.*, 2004 WL 609357, at *2 (N.D. Ill. Mar. 24, 2004) ("In the vast majority of cases, reasonable procedures should be determined by a jury.").

## III.    Huizar's Section 1681i(c) Claim

In addition to his § 1681i(a) and § 1681e(b) claims, Huizar seeks summary judgment on a § 1681i(c) claim. I discussed above the requirement that CRA's

28

reinvestigate consumer disputes. If a CRA's reinvestigation does not resolve the dispute, a consumer may then "file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). If such a statement of dispute is filed, and "unless there is reasonable grounds to believe that it is frivolous or irrelevant", the CRA "*shall*, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof." 15 U.S.C. § 1681i(c) (emphasis added). Only Huizar moves for summary judgment on this claim.

To establish that Experian violated 15 U.S.C. § 1681i(c), Huizar must show: (1) he disputed inaccurate information contained in his credit file; (2) Experian's reinvestigation did not resolve his dispute; (3) he filed a statement of dispute with Experian upon completion of the reinvestigation; and (4) the statement he filed was not included in subsequent credit reports released by Experian. *Quinn*, 2004 WL 609357, at *7.

Huizar has not advanced sufficient undisputed facts to establish he is entitled to judgment on his § 1681i(c) claim as a matter of law. Huizar argues Experian "never added a proper statement of [his] dispute to his credit file." [DE 176 at 19]. This underbaked argument is unsupported in two key respects. First, Huizar fails to point the Court to any statement within his dispute letters that was either not included or was not accurately summarized by Experian in subsequent credit reports. And while there are "no magic words a consumer must incant to request the inclusion of a dispute

statement", *Chaitoff*, 79 F.4th at 820, Huizar's briefing does not identify *any* language in his dispute letters that he says requested Experian to add a § 1681i(c) dispute statement to his credit report. I won't go hunting for such language in the massive record in this case nor will I make Huizar's argument for him. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Second, Huizar provides no explanation for what information his credit report omits (his "proper statement") that he requested Experian include. In support of his argument, Huizar blankly points to Exhibits 35 and 48 to his motion, which are a December 18, 2020, Experian credit report and a July 24, 2021, Experian credit report. [DE 176 at 19]. [*See also*, DE 172-14, Ex. 35; DE 172-19, Ex. 48]. Huizar provides no explanation of the statement of dispute these credit reports purportedly lack. Taking all reasonable inferences in Experian's favor as I must, *Waukegan Potawatomi Casino, LLC*, 128 F.4th at 873, Huizar has failed to present evidence to prevail on his § 1681i(c) claim on summary judgment.

## IV.    Willfulness, Negligence, and Damages

If all else fails, Experian tells me it is entitled to summary judgment because there is no proof that Huizar was damaged as a result of the inaccurate credit reporting. Huizar alleges both a negligent (actionable under 15 U.S.C. § 1681o) and willful (actionable under 15 U.S.C. § 1681n) violation of the FCRA. The Seventh Circuit has made it clear that courts should first answer the "antecedent question of whether a

violation [of the FCRA] occurred" before analyzing a defendant's mental state. *See*

*Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021).

To prove a negligent violation of the FCRA, Huizar must establish "actual

damages." 15 U.S.C. § 1681o(a)(1). "Actual damages require a 'causal relation' between

the statutory violation and the harm suffered by the plaintiff." *Persinger*, 20 F. 4th at

1194 (citation omitted). To prevail on its motion for summary judgment as to Huizar's

negligence claims, Experian must show that there is no genuine dispute as to whether

Huizar suffered actual damages because of Experian's violation of the FCRA. *Bagby v.*

*Experian Info. Sols., Inc.*, 162 F. App'x 600, 603-04 (7th Cir. 2006).

Not surprisingly, a willful violation is treated differently under the FCRA. "A

willful violation is one committed with actual knowledge or reckless disregard for the

FCRA's requirements." *Persinger*, 20 F. 4th at 1195 (citing *Safeco*, 551 U.S. at 57). A

company acts with reckless disregard for the FCRA if its actions were "a violation

under a reasonable reading of the statute's terms," and the company "ran a risk of

violating the law substantially greater than the risk associated with a reading that was

merely careless." *Safeco*, 551 U.S. at 69.

In its summary judgment briefing Experian argues "if the Court were to decide

that Experian violated either § 1681e(b) or § 1681i, the Court should still grant summary

judgment in favor of Experian on Plaintiff's claim that Experian willfully violated

FCRA." [DE 181 at 17]. Experian seeks summary judgment on damages stating that

Huizar's claims under §§ 1681e(b) and 1681i require him to show that he suffered actual

damages and that those damages were cause by the inaccuracy. [DE 181 at 19]. On my reading of the record, Huizar has raised a genuine issue of material fact as to whether he has suffered actual damages such that summary judgment should not be granted in favor of Experian. Huizar asserts that he lost opportunities to purchase a home for his family due to being denied conventional financing. [DE 195 at 11]. Huizar points to a Xactus consumer report used in his mortgage applications in January and April of 2021 which showed that he owed a balance on the Horizon account. [DE 172-46 at 4, Ex. 100]. Huizar states that Experian's reporting of the Horizon tradeline lowered his credit score to 619, one point lower than the 620-score needed to secure the loan. Huizar has pointed to evidence in the record showing that his Experian credit score increased above the 620-score required once the Horizon tradeline did not report a balance. [DE 195 at 14]; [DE 172-50 at 68:18-23, Ex. 110].

Huizar has also pointed to the deposition testimony of Allison Van Pelt, a loan originator at Flanagan State Bank, as evidence that he has suffered actual damages. [DE 195 at 12-13]. Van Pelt testified that upon receiving a mortgage application she pulls the applicant's credit and decides whether the applicant qualifies for certain mortgage programs. [DE 172-50 at 20:22-21:14, Ex. 110]. Van Pelt testified that when she pulled Mr. Huizar's credit, if the Horizon tradeline balance should have been zero but was a positive number it would have negatively impacted his ability to obtain a mortgage. [*Id.* at 70:13-19].

Finally, Huizar points to statements from his own deposition testimony to

illustrate that he has suffered actual damages. During his deposition, Huizar provided testimony regarding the stress Experian's allegedly inaccurate reporting has caused him, the anxiety medication he takes, and the embarrassment he has suffered from not being able to purchase a home like his peers and co-workers. [DE 195 at 17-19]. Without engaging in a full-blown analysis of Huizar's potential damages at this stage, Huizar has pointed to evidence raising a genuine issue as to whether he has suffered actual damages such that the issue should be presented to a jury. Because a reasonable jury could find that Huizar has suffered actual damages, summary judgment should not be granted in Experian's favor. *Cincinnati Ins. Co. v. Menards, Inc.*, 2017 WL 2505002, at *3 (S.D. Ill. June 9, 2017) ("A genuine issue of material fact remains (and summary judgment should be denied), if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

*   *   *

The record before me illustrates that there are genuine issues of material fact that should be presented to a jury at trial. Factual questions which remain are: (1) Whether Experian's reporting of the Horizon tradeline in Huizar's file contained inaccurate information, (2) Whether Experian failed to conduct a reasonable reinvestigation by failing to consider the Tippecanoe Circuit Court Order and using the ACDV process for each of Huizar's disputes, (3) Whether Experian has in place reasonable procedures to assure maximum possible accuracy, and (4) Whether Huizar has suffered actual damages. As such, a grant of summary judgment in either direction is not appropriate,

33

and this case should proceed to trial.

     **ACCORDINGLY**:

     Plaintiff Fabian Huizar's Motion for Partial Summary Judgment [DE 172] is

**DENIED**. Defendant Experian Information Solutions, Inc.'s Motion for Summary

Judgment [DE 179] is also **DENIED**.

     **SO ORDERED**.

     ENTERED: November 5, 2025.

                    /s/ Philip P. Simon
                    PHILIP P. SIMON, JUDGE
                    UNITED STATES DISTRICT COURT